**FRATERNAL ORDER OF POLICE, WHITE ROSE LODGE NO. 15**

v.

**The CITY OF YORK and the City of York Police Pension Fund Association, Appellants.**

Commonwealth Court of Pennsylvania.

Argued Dec. 8, 1997.

Decided Feb. 17, 1998.

Donald B. Hoyt, York, for appellants.

Gary M. Lightman, Harrisburg, for appellee.

Before COLINS, President Judge, and FLAHERTY, J., and NARICK, Senior Judge.

FLAHERTY, Judge.

The City of York and the City of York Police Pension Fund Association (City) appeal from an order of the York County Court of Common Pleas (trial court) dismissing the City's exceptions to an arbitration award which increased the City's financial responsibility for the pension benefits of City police. We affirm.

In September 1990, the Fraternal Order of Police (FOP) filed an action for declaratory

and injunctive relief in the trial court challenging the facial and applied validity of a City pension ordinance. The complaint alleged that the ordinance deprived police officers of constitutionally protected contractual pension rights by unilaterally reducing the level of retirement benefits both for employees already retired and receiving benefits and for employees who had been hired and had become members of the pension fund prior to the enactment of the ordinance without agreement or approval of the FOP, which is the exclusive bargaining representative for the City's police personnel.

The City is a Pennsylvania municipality that is governed by The Third Class City Code (Code), Act of June 23, 1931, P.L. 932, *as amended*, 53 P.S. §§ 35101–41625 which requires that all cities regulated by the Code establish a police pension fund. Section 4301 of the Code, 53 P.S. § 39301. Section 4303 of the Code sets forth the basis for the calculation of all pension benefits and states the following:

> (a) Payments for allowances shall not be a charge on any other fund in the treasury of the City or under its control save the police pension fund herein provided for. The basis of the apportionment of the pension shall be determined by the rate of the monthly pay of the member at the date of injury, death, honorable discharge, or retirement, and, except as to service increments provided for in subsection (b) of this section, shall not in any case exceed in any year one-half the annual pay of such member computed at such monthly rate.

53 P.S. § 39303(a). Accordingly, the General Assembly has required that all basic police pension benefits are to be calculated at a maximum of 50% of the retiree's pay at the time of his retirement.

In 1967, the City passed Ordinance No. 39 (1967 Ordinance) granting an annual pension allowance increase to retired police officers. This ordinance did not repeal any existing ordinances; however it did add a new section, called "Section 11." Section 11 provided the following:

> Notwithstanding the provisions of this or any other ordinance to the contrary, all allowances of persons receiving allowances

of any kind from the police pension fund, by reason of and after termination of the services of any member of said fund, by application for the retirement after reaching the length of service and age requirements, where said allowances are less than one-half of the current salary being paid to patrolmen of the highest pay grade, shall be increased, until such allowances equal one-half of the current salary being paid patrolmen of the highest pay grade.

(City of York Ordinance No. 39 (1967)).

In 1972, the City passed Ordinance No. 27 (1972 Ordinance) which superseded the above-mentioned 1967 Ordinance by creating incrementally scaled increases for pension enhancements. The 1972 Ordinance provided the following:

> Notwithstanding the provisions of this or any other Ordinance to the contrary, all allowances of persons receiving retirement allowances from the Police Pension Fund after such persons have attained the age of 65 shall be increased by twenty-five (25%) percent of the annual increase in salary, if any, given after said date to active patrolmen of the highest pay grade.

(City of York Ordinance No. 27 (1972)).

The FOP initiated its representation of City police officers for purposes of collective bargaining in 1968. The City and the FOP, first negotiated for retirement benefits in their collective bargaining agreement of 1971, which provided that retirement benefits shall be at half pay. In the 1975 collective bargaining agreement, the parties altered the retirement language and allowed for retirement pay in an amount equal to fifty percent of a police officer's annual salary at retirement. This language remained substantially the same in all eight subsequent collective bargaining agreements since the 1975 agreement.

During the time between the enactment of the 1972 Ordinance and the FOP's filing of its complaint with the trial court in September 1990, the FOP did not raise any issues regarding pension benefits and voluntarily entered into numerous collective bargaining agreements with the City.

After the close of the pleadings and initial discovery, the trial court, by order dated June 20, 1994, approved a mutual agreement of the parties to defer the matter to arbitration and directed that the parties resolve their dispute by arbitration pursuant to the parties' collective bargaining agreement.[1] The parties mutually selected an impartial arbitrator, (Arbitrator), who entered an award on June 17, 1994. The Award states the following:

> 1. Following his retirement from the police department, each officer shall receive an annual increase in his pension equal to 50% percent of the increase in salary given to the same rank which the officer held in the department at the time of his retirement.
>
> 2. Effective and retroactive to July 1, 1992, York City police officers shall be entitled to receive pensions pursuant to section 1 above.
>
> 3. Nothing in this award shall prohibit the City and the FOP from negotiating any change in the police pension plan, including the elimination or replacement of this benefit.

(R.R. at 38a). After conducting an actuarial analysis of the arbitrator's award, the City concluded that the award would require the City to contribute $2,262,538 annually to the police pension fund, which is an increase of approximately $1.6 million in annual contributions over the City's existing $600,000 annual contribution, and which represents 16% of the City's $18,000,000 in annual revenues. On November 4, 1994, almost five months after the arbitrator issued his award; the City filed exceptions with the trial court.

The trial court determined that the exceptions were an appeal from a final decision of a common law arbitration, ruled that it did not have jurisdiction to hear the appeal because the appeal was untimely filed, and dismissed the appeal by granting FOP's petition to quash the exceptions.

The City presents us with the following issues: whether the trial court properly dismissed the City's exceptions to the arbitration award as an untimely filed appeal; whether the arbitration award was an advisory opinion preventing it from having a final and binding status from which an appeal could be taken; and whether the trial court retained original jurisdiction and supervisory control over the arbitration such that the trial court's review of the arbitration award did not constitute an appeal. The FOP presents for our resolution whether the City, on appeal before this court, waived the issue of whether the arbitration award was advisory by failing to raise the issue before the trial court.

■ Appellate review of a trial court's order granting a motion to quash and dismissing for lack of jurisdiction is limited to a determination of whether the trial court abused its discretion or committed an error of law. *Baker v. Chartiers Township,* 163 Pa.Cmwlth. 574, 641 A.2d 688, 689 n. 3 (1994), *appeal denied,* 539 Pa. 655, 651 A.2d 542 (1994).[2]

This appeal requires us to determine the procedural posture of the City's exceptions to the arbitrator's decision which were filed with the trial court, i.e., whether the exceptions constituted an appeal from a final and binding arbitration award or whether they

1. The trial court recognized in its opinion that the parties actually began the arbitration process prior to the trial court's order.

2. The arbitration in the instant matter was not triggered by the filing of a grievance or the parties' desire to resolve an impasse in negotiations over terms to be included in their next collective bargaining agreement. The trial court ordered, and the parties agreed, that they would arbitrate their disputes before an arbitrator pursuant to their collective bargaining agreement. Recognizing that this order could be interpreted as a direction for arbitration pursuant to the Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10, commonly known as "Act 111," the trial court nevertheless concluded that the arbitration constituted common law arbitration because the arbitration machinery in the agreement was not invoked; rather the parties mutually agreed to have a judicial controversy finally determined by an arbitrator. The trial court noted that, in the FOP's complaint, "no referral was made to the grievance and arbitration mechanism provided in the collective bargaining agreement; and there is no assertion of any contractual violation." (Trial Court Opinion at 10). As more fully explained in the text of the opinion, we agree with the trial court's reasoning and conclusion.

constituted a filing within the trial court's original jurisdiction as part of the original declaratory judgment action filed by the FOP. The City argues that the trial court erred by treating the arbitrator's award as a final judgment subject to appeal because the award would require legislative action to fund the increase in police pension benefits and is therefore advisory only. The FOP responds that the City has waived the issue of whether the arbitration award was only advisory because it failed to raised this issue before the trial court as required by Pa. R.A.P. 302.[3]

As an initial matter, we must agree that the City has indeed waived this argument. A careful review of the record, especially the City's "Memorandum of Law in Support of City of York's Exceptions to Arbitration Award" (City's Memorandum) filed in the trial court indicates that the City never raised this issue with the trial court. In its reply brief filed with this Court, the City argues that it repeatedly argued in the trial court that the award was a non-final, non-binding recommendation and thus it did not waive the issue of the award being merely advisory.

While it is true that the City argued to the trial court that the award was not final nor binding, the City argued only that the award was non-final and non-binding *because* (1) the award did not address the constitutional issues raised by the FOP in its complaint filed with the trial court, (2) the award did not draw its essence from the collective bargaining agreement and (3) the award requires the City to do an illegal act, namely, mandating a pension greater than that permitted by the legislature. (See City's Memorandum). Indeed, nowhere does the City argue in the court below that the award was non-final and non-binding *because* it was merely advisory, in that it required legislative action. In fact, although the City points out where it raised the issue of the non-binding nature of the award below, it fails to point out where it argued that the award was non-binding *because* it was advisory. The

City concedes that in the trial court it did not use the word "advisory" to describe the award. The City did not use the word "advisory" below because it did not argue below that the award was not final or binding *because* it was only advisory in that it required legislative action. Accordingly, we find this issue to be waived.

Even if we were to find that the issue was not waived, we find the City's arguments to be meritless. In support of its contention that the award was not final because it was merely advisory, the City directs our attention to Section 804 of the Public Employe Relations Act (Act 195), Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. § 1101.804, which states that "[n]othing in this article shall prevent the parties from submitting impasses to voluntary binding arbitration with the proviso the decision of the arbitrator which would require legislative enactment to be effective shall be considered advisory only." *Id.* The City further agrees with the trial court and argues that the arbitration in the instant matter was a common law arbitration rather than arbitration pursuant to Act 111. However, while the City argues that the instant arbitration was governed by common law rather than Act 111, it simultaneously asserts that this so-called common law arbitration is governed by the provisions of Act 195. In this regard, the City maintains that, under this court's decision in *County of Lehigh v. AFSCME, District Council 88, AFL-CIO*, 95 Pa.Cmwlth. 486, 505 A.2d 1104 (1986), which construed Act 195, where a legislative enactment is required to effectuate an arbitrator's award, the award is not binding and must be considered advisory only. A legislative enactment is any appropriation of funds or levying of taxes by a political subdivision. *Id.* 505 A.2d at 1107. This argument, however, is without merit for several reasons.

Act 195 governs collective bargaining relationships between public employers of the Commonwealth and "public employes." Section 101 of Act 195, 43 P.S. § 1101.101. On the other hand, Act 111 is the exclusive

---

3. Rule 302 states that "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa. R.A.P. 302.

statute which governs the collective bargaining and employment relationships between police or fire personnel of the Commonwealth or any political subdivision thereof. Section 1 of Act 111, 43 P.S. 217.1. Although Section 804 of Act 195 does state that the decisions of an arbitrator, which would require legislative enactments to be implemented, shall be advisory only, and a legislative enactment would seemingly be required to provide the additional funding for the City's pension fund as ordered by the arbitrator, Act 195 is not applicable to the instant labor dispute for two reasons. First, this case involves City police; such disputes are statutorily controlled exclusively by Act 111, not Act 195. Indeed, Act 195 specifically excludes from its operation police officers. In its definitional section, Act 195 defines a public employee to mean

Any individual employed by a public employer but shall not include ... those employes covered under the act of June 24, 1968, (Act No. 111) entitled "An act specifically authorizing collective bargaining between policemen and firemen and their public employers; providing for arbitration in order to settle disputes, and requiring compliance with collective bargaining agreements and findings of arbitrators."

Secondly, even if we found that Act 195 was applicable to this case, the provision for merely advisory arbitration awards as called for in Article 8 of Act 195, by its plain language, appears to apply only to arbitration awards made in the context of impasses in bargaining for a new collective bargaining agreement and not, in the context of arbitrating a grievance which is essentially the case here. Thus, Act 195 is simply inapplicable to the instant case.

The City also argues that the trial court referred the matter to arbitration as a means to assist in the resolution of the case without the trial court giving up its jurisdictional control over the litigation and, as a result, there is no time limitation in requesting the trial court to review the arbitration award. The City argues that, because the trial court's order stated that "[u]pon issuance of an arbitration award that is final and binding upon the parties and provides a resolution to the constitutional issues in dispute, this case

will be withdrawn and dismissed without prejudice," (R.R. at 35a), and because the Arbitrator failed to address the issues in dispute, the award cannot be final and binding. The City also contends that the FOP must move the trial court for an order confirming the arbitration award before it is final. We disagree.

In the City's new matter, which was included as part of their answer to the FOP's complaint seeking declaratory relief in the trial court, the City asserted that the trial court lacked jurisdiction over the complaint because the FOP was obligated under the collective bargaining agreement to exhaust remedies through the arbitration procedure provided in the agreement. The City's new matter also asserted that the FOP's complaint was barred by the statute of limitations, laches, waiver, and equitable estoppel. The City further asserted in their new matter that the complaint raised issues of unfair labor practices which were in the exclusive jurisdiction of the Pennsylvania Labor Relations Board and therefore, the FOP failed to exhaust its administrative remedies and a complaint in the trial court's original jurisdiction was improper.

In this regard, the City had previously taken the position that the trial court was not the appropriate original forum for the FOP's requested relief. Subsequently, the City voluntarily agreed to submit the matter to arbitration. This agreement to arbitrate did not act as a waiver of the City's affirmative defenses, including statute of limitations, waiver, laches, and equitable estoppel, because, as the trial court noted, the trial court's order deferring the matter to arbitration directed that the arbitration award provide a resolution to the issues in dispute which referred to all the issues raised in the pleadings. (Trial Court Opinion at 17 n.15). Therefore, the agreement to arbitrate the dispute reinforced the City's position that the trial court was not the appropriate forum for the original action. In this regard, the City has already taken the position that the trial court has appellate jurisdiction only over the matter in dispute. Additionally, whether or not the arbitrator addressed the issues presented before him for resolution is a matter

properly disposed of on appeal; it does not change the posture or nature of the proceedings before the arbitrator nor does it alter the appellate role of the trial court subsequent to the arbitration award. Section 933 of the Judicial Code provides the following:

(b) Awards of Arbitrators—Except as otherwise prescribed by general rule adopted pursuant to Section 503, each Court of Common Pleas shall have jurisdiction of petitions for review of an award of arbitrators appointed in conformity with a statute to arbitrate a dispute between a government agency, except a Commonwealth agency, and an employee of such agency. The application shall be deemed an appeal from a government agency for purposes of Section 762(4) (relating to appeals from courts of common pleas) and Chapter 55 (relating to limitation of time).

42 Pa.C.S. § 933(b). Furthermore, Section 5571(b) states that "an appeal from a tribunal or other government unit to a court or from a court to an appellate court must be commenced within 30 days after the entry of the order from which the appeal is taken." 42 Pa.C.S. § 5571(b). Moreover, even assuming that the trial court retained its original jurisdiction, the City would be estopped from collaterally attacking or seeking resolution of the identical issues already decided as between the City and the FOP in another original jurisdiction proceeding, i.e., the arbitration. Therefore, the trial court's review of the arbitration award in the instant matter must be considered an appeal.

The trial court determined that its June 20, 1994 order sanctioned the parties' previous voluntary agreement to submit their dispute to common law arbitration. The trial court reasoned that the instant arbitration constituted common law arbitration because such arbitration "arises from an agreement of the parties, providing that arbitrators will, by their award, define and settle the respective rights and duties of the parties in relation to the agreement and that the parties will respectively obey the award." (Trial Court Opinion at 16). Arguably, if an arbi-

trator fails to address all the issues or to define all the rights and obligations of the parties, there is no arbitration under this definition. However, every time an arbitrator makes an error, the courts cannot treat the award as nonexistent; rather the courts must review the award in its appellate jurisdiction and, to the extent permitted by its scope of review, correct any errors. The trial court concluded that the instant arbitration award was not controlled by Act 111 because the FOP failed to initiate the grievance and arbitration machinery provided in the collective bargaining agreement.[4] The issue of whether or not this conclusion is correct is rendered moot because, as the trial court noted, whether the type of arbitration award in the instant case was common law arbitration, judicial arbitration, Act 111 arbitration, or arbitration pursuant to the Uniform Arbitration Act, an appeal from any such award must be brought within thirty (30) days from either the delivery or the entry of the award. No matter what type of arbitration award was issued, therefore, the City's exceptions, which were in the nature of an appeal, were untimely filed. Furthermore, while a party can move for an order confirming the arbitrators award more than thirty days beyond the date the award was issued, and the trial court must thereby issue an order in conformity with the award to enforce it, as a general rule, the court lacks jurisdiction to entertain an appeal to review the merits of the award more than thirty days beyond its issuance or delivery. Additionally, there is no authority supporting the City's position that the award is not final until FOP moves the trial court to enter an order confirming the award.

■ Therefore, the trial court did not abuse its discretion or commit an error of law by determining that the City's exceptions to the arbitration award issued by Arbitrator constituted an untimely filed appeal over which the trial court did not have jurisdic-

---

4. The trial court also noted that the FOP could have submitted a grievance on behalf of the City's police officers and triggered the grievance and arbitration machinery provided in the par-

ties' collective bargaining agreement. The review of such an arbitration award, in the trial court's opinion, would have been controlled by Act 111.

tion.[5]

## ORDER

NOW, February 17, 1998, the order of the Court of Common Pleas of York County, dated May 30, 1997, Docket No. 90–SU–04445–08, is hereby affirmed.

---

5. However, it is important to note that the City is not without an opportunity to challenge the merits or legality of the arbitration award which will apparently impose a great financial hardship upon the City if and when the award is enforced. A mandamus action is the appropriate procedure to seek enforcement of an arbitration award against a political subdivision, when the political subdivision refuses to comply with the award, and the City may assert the illegality of the award as a defense in the mandamus action. *Guthrie v. Borough of Wilkinsburg,* 508 Pa. 590, 593 n. 1, 499 A.2d 570, 571 n. 1 (1985).